Chief Judge Fuld.
 

 In each of these two appeals, an owner of property in Sullivan County—Bardowitz and Terrace—• seeks damages against the State for its attempted appropriation of negative easements which would have barred billboards and advertising signs from the claimant’s land abutting the Quickway (Route 17). The Superintendent of Public Works, acting on behalf of the State, actually filed appropriation maps in 1958
 
 *528
 
 and 1959 purporting to appropriate the easements pursuant to section 30 of the Highway Law. The State’s right to act under its power of eminent domain was not questioned by either claimant and each brought suit for damages in the Court of Claims in June of 1960.
 

 While these claims were pending, in July, 1961, our court decided
 
 Schulman
 
 v.
 
 People
 
 (10 N Y 2d 249, revg. 11 A D 2d 273) wherein we held that the Superintendent of Public Works was not authorized to condemn a negative easement barring the use of property for outdoor advertising purposes under section 30 of the Highway Law or any other provision of statute. Following that determination, the State moved to dismiss the appropriation claims of both Bardowitz and Terrace, and the Court of Claims granted the motions ‘ ‘ without prejudice ’ ’ to the filing of new claims for damages caused by the appropriation proceedings.
 

 Shortly thereafter, each of the claimants filed a claim for damages — $8,000 by Terrace and $12,500 by Bardowitz — assertedly sustained by them, for trespass, the creation of a cloud on title and for the amount incurred for legal services in connection with the State’s discontinued appropriation of the easements. The Court of Claims dismissed the claims and, on appeal, the Appellate Division affirmed the judgments by a closely divided court.
 

 In
 
 New York State Thruway Auth.
 
 v.
 
 Ashley Motor Ct.
 
 (10 N Y 2d 151, 158), we held that it was “ a constitutional exercise of the State’s police power ” for the Legislature, without providing compensation, to prohibit the erection or maintenance of “ advertising devices ”— i.e., bill-boards on lands adjacent to the New York Thruway (Public Authorities Law, § 361-a). Thi-s bind of land use restriction imposed pursuant to the exercise of the State’s police power is, as we noted in the
 
 Schulman
 
 case (10 N Y 2d 249, 254,
 
 supra),
 
 exactly the same as the negative easements of which these claimants complain. It is clear, therefore, that, if the Legislature had wanted to," it could have permanently acquired such easements over the claimants’ properties abutting the Quickway without paying anything for them at all. The Legislature, however, has specifically declined to pass the necessary legislation. (See
 
 Schulman
 
 v.
 
 People,
 
 10 N Y 2d 249, 254, n.,
 
 supra.)
 
 Nor did it authorize the Superintendent of
 
 *529
 
 Public Works to acquire the negative easements by exercise of the power of eminent domain. (See
 
 Schulman
 
 v.
 
 People,
 
 10 N Y 2d 249,
 
 supra.)
 
 Even so, the claimants are not entitled to damages for the three-year period, between the filing of the appropriation maps and our decision in the
 
 Schulman
 
 case, during which they were prevented from using their lands for advertising purposes.
 

 If an authorized appropriation of these negative .easements would not have been a
 
 taking
 
 of private property for public use without just compensation (N. Y. Const., art. I, § 7, subd. [a]; U. S. Const., 5th Amdt.; see
 
 New York State Thruway Auth.
 
 v.
 
 Ashley Motor Ct.,
 
 10 N Y 2d 151,
 
 supra),
 
 the unauthorized nature of the appropriation should make no difference. In other words, for purposes of deciding whether State action was confiscatory, the crucial question is not the manner in which the taking occurred but, instead, whether a
 
 compensable
 
 property interest was taken. The fact that a government official acted without sufficient authority must be considered separately, on its own merits, as a possible and independent basis for holding the State liable in tort.
 

 In our view, the appropriation of these negative easements was not confiscatory and is very different from the situation where a government official, acting beyond his authority, seizes property, such as a fee interest, which the State could never have validly acquired except upon payment of compensation. (See, e.g.,
 
 Village of St. Johnsville
 
 v.
 
 Smith,
 
 184 N. Y. 341;
 
 Folmsbee
 
 v.
 
 City of Amsterdam,
 
 142 N. Y. 118; see, also, 6 Nichols, Eminent Domain [3d ed.], § 28.3, subd. [1].) Here, the State could have extinguished the claimants’ rights to erect billboards on their lands simply by enacting a statute to that effect. (Compare
 
 New York State Thruway Auth.
 
 v.
 
 Ashley Motor Ct.,
 
 10 N Y 2d 151,
 
 supra,
 
 with
 
 Scarsdale Supply Co.
 
 v.
 
 Village of Scarsdale,
 
 8 N Y 2d 325.) It follows that the property interests which were temporarily seized are noncompensable, which is but another way of saying that the State is not constitutionally obligated to pay for them. (See
 
 New York State Thruway Auth.
 
 v.
 
 Ashley Motor Ct.,
 
 10 N Y 2d 151,
 
 supra;
 
 cf.
 
 Matter of Cromwell
 
 v.
 
 Ferrier,
 
 19 N Y 2d 263;
 
 People
 
 v.
 
 Stover,
 
 12 N Y 2d 462.)
 

 
 *530
 
 Nor does the fact that the Superintendent of Public Works acted without authority give rise to liability on the part of the State since his conduct was not tortious. Although the unauthorized filing of appropriation maps might, under certain circumstances, amount to a slander of title (see, generally, Ann., Recording of Instrument Purporting to Affect Title as Slander of Title,
 
 39
 
 ALR 2d 840), that cause of action requires allegations and proof of malice or spite which are missing here. (See
 
 Lovell Co.
 
 v.
 
 Houghton,
 
 116 N. Y. 520, 528-529;
 
 Hovey
 
 v.
 
 Rubber Tip Pencil Co.,
 
 57 N. Y. 119, 125-126; see, also, Restatement, Second, Torts, Tent. Draft No. 13 [April 27, 1967], § 624.) The record establishes that the Superintendent of Public Works acted in good faith and in the belief that he was authorized by section 30 of the Highway Law to appropriate these negative easements. An indication of the reasonableness of his position may be found in the fact that, when the
 
 Schulman
 
 case was appealed, the Superintendent’s view was adopted by four of the Justices of the Appellate Division (11 A D 2d 273,
 
 supra)
 
 and was rejected in our court only by the narrowest of margins (10 N Y 2d 249,
 
 supra).
 

 Of course, the situation would be different if there had been signs on these properties and the Superintendent had torn those signs down. But no claim has been made that any State officials actually did enter upon the lands and destroy existing structures. In fact, the record reveals that there never were any signs on these lands before the appropriations, nor have any been erected in the six years since we declared, in the
 
 Schulman
 
 case (10 N Y 2d 249,
 
 supra),
 
 that the appropriations were unauthorized. In the absence of a valid cause of action for damages, each claimant’s remedy for the unauthorized filing of the appropriation maps was to remove the cloud on his title by bringing a proceeding under article 15 of the Real Property Actions and Proceedings Law.
 

 There is some merit, however, to the point that, even though the claimants are not entitled to damages for the unauthorized appropriations themselves, they should, perhaps, be reimbursed for the legal expenses which they incurred in connection with the original appropriation proceedings. It is a well-settled principle, firmly established in both our statutes and case law, that, if the State seeks to discontinue or abandon a condemnation
 
 *531
 
 proceeding, it may be required, in the court’s discretion, to pay to the landowner “ full indemnity for the expenses to which he was subjected
 
 (Matter of Waverly Water Works Co.,
 
 85 N. Y. 478, 482; see Condemnation Law, § 18; Administrative Code of City of New York, § B15-35.0; see, also, 6 Nichols, Eminent Domain [3d ed.], § 26.45.) The cases before us, of course, were not condemnation proceedings brought by the State in the Supreme Court (Condemnation Law, § 4) but rather suits by the landowners in the Court of Claims for the value of the properties appropriated (Highway Law, § 30, subd. 14). Nevertheless, since the two types of proceedings are concerned with identical State activity—exercise of the power of eminent domain—the same principles governing State liability should be applicable to both.
 

 Under our statutes, the initial step in acquiring private property for public use is not necessarily the institution of court proceedings. When the State files appropriation maps with a county clerk, it commits itself to an exercise of the power of eminent domain as completely as if it had filed a condemnation petition in the Supreme Court. Accordingly, if, after the filing of appropriation maps, the landowners bring suit in the Court of Claims and the State then moves to dismiss the actions on the ground that it no longer seeks to acquire the properties in question, it is in fact seeking a discontinuance of proceedings which it initiated in the first instance. Once the State chooses to discontinue exercising the power of eminent domain in a particular case, it is only meet that the courts should have discretion to indemnify the landowner for the legal expenses to which he has been unnecessarily put.
 

 To be sure, section 27 of the Court of Claims Act provides that “Costs, witnesses’ fees and disbursements shall not be taxed, nor shall counsel or attorneys’ fees be allowed by the court to any party.” However, we do not believe,that this general rule was designed to prohibit the award of legal expenses and counsel fees by the court upon discontinuance of eminent domain proceedings by the State. The discretionary power of the courts to make such awards existed at common law (see
 
 Matter of Waverly Water Works Co.,
 
 85 N. Y. 478, 482,
 
 supra),
 
 and it has consistently received legislative sanction (Condemnation Law, § 18; cf. CPLB. 3217, subd. [b]; Administrative Code
 
 *532
 
 of City of New York, § B15-35.0). Under the circumstances, it would bo unreasonable to find in the general language of section 27 a legislative purpose to deprive the Court of Claims of this same power.
 

 In the case before ns, that court held,
 
 as a matter of law,
 
 that the claimants were not entitled to recover their legal expenses in connection with the original appropriation proceedings. That determination, which was sustained by the Appellate Division, was erroneous; as we have already indicated, the Court of Claims has discretion to award attorneys’ fees and legal expenses whenever the State seeks to discontinue further-exercise of the power of eminent domain. Accordingly, the cases must be sent back to the Court of Claims so that it may decide,
 
 in its discretion,
 
 whether such counsel fees and legal expenses are warranted here.
 

 To sum up—the claimants do not have valid causes of action for damages based on the unauthorized appropriations of these negative easements because (1) the property interests which were seized are noncompensable (see
 
 New York State Thruway Auth.
 
 v.
 
 Ashley Motor Ct.,
 
 10 N Y 2d 151,
 
 supra)
 
 and (2) the mere filing of the appropriation maps, not having been motivated by malice, did not constitute slander of title. (See
 
 Lovell Co.
 
 v.
 
 Houghton,
 
 116 N. Y. 520, 528-529,
 
 supra.)
 
 However, the Court of Claims should have determined, in the sound exercise of its discretion, whether the claimants were entitled to recover the legal expenses they incurred in the discontinued appropriation proceedings. (See
 
 Matter of Woverly Water Works Co.,
 
 85 N. Y. 478,
 
 supra.)
 

 The orders of the Appellate Division should be reversed, with costs in our court and in the Appellate Division, and the cases remanded to the Court of Claims for further proceedings in accordance with this opinion.
 

 Judges Van Voorhis, Burke, Scilefpi, Bergan, Keating and Breitel concur.
 

 In each case: Order reversed, with costs in all courts, and case remitted to the Court of Claims for further proceedings in accordance with the opinion herein.